ARCHER & GREINER
A Professional Corporation
One Centennial Square
P.O. Box 3000
Haddonfield, New Jersey 08033-0968
(856) 616-2681
Attorneys for Plaintiff,
Albion Engineering Company
BY:  TREVOR J. COONEY, ESQUIRE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| ALBION ENGINEERING COMPANY, a New Jersey corporation,<br><br>               Plaintiff,<br><br>    vs.<br><br>HARTFORD FIRE INSURANCE COMPANY, a Connecticut corporation,<br><br>             Defendant. | CIVIL ACTION NO. _____<br><br>**COMPLAINT FOR DECLARATORY RELIEF [JURY TRIAL DEMANDED]** |

Plaintiff Albion Engineering Company ("Albion"), with its principal place of business located at 1250 N. Church Street, Moorestown, Burlington County, New Jersey 08057-1102, files this Complaint for declaratory judgment against its general liability insurer, Defendant Hartford Fire Insurance Company ("Hartford"), with its principal place of business located at One Hartford Plaza, Hartford, Connecticut 06155-0001, based on its failure to defend Albion in the underlying

action styled as *Newborn Bros. Co., Inc. v. Albion Engineering Company* filed in the United States District Court for the District of New Jersey ("District Court"), Case No. 1:12-cv-02999-NLH-KMW (the "*Newborn Suit*").

Plaintiff Albion alleges as follows:

## THE PARTIES

1.     Albion is a New Jersey corporation with its principal place of business located at 1250 N. Church Street, Moorestown, Burlington County, New Jersey 08057-1102.

2.     Hartford is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

## JURISDICTION

3.     This Court has jurisdiction over this action under 28 U.S.C. § 1332 (Diversity) and 28 U.S.C. §§ 2201 and 2202 (Declaratory Relief).

4.     Complete diversity of citizenship exists between the parties.  Albion is a citizen of New Jersey; Hartford is a citizen of Connecticut, and their principal places of business differ–Albion is in New Jersey and Hartford is in Connecticut.

5.     The amount in controversy is in excess of $75,000, exclusive of interests and costs in that Albion has incurred more than this sum in attorneys' fees and costs in defending the *Newborn Suit*.

## VENUE

6.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b), in that a substantial part of the events and omissions giving rise to claims herein incurred this District. Albion, a New Jersey resident, purchased the pertinent insurance policy with nationwide coverage from Hartford in this district.

7.     Albion's defense of the *Newborn Suit* has been, and is, taking place in this federal court in Camden, New Jersey.  Pertinent witnesses and documents are located in New Jersey and the underlying matter will be litigated here.  Moreover, most of the wrongful conduct that Albion allegedly committed that is the subject of the *Newborn Suit* took place in this district.

## THE HARTFORD POLICY

8.     Hartford sold to Albion a Commercial Package Policy with policy number 13 SBQ PZ6512 for the policy year May 1, 2005 to January 1, 2006, as renewed through September 30, 2007 ("Hartford Policy"). A copy of the Hartford Policy is attached as **Exhibit "1."**

9.     The pertinent language in the Hartford Policy's Business Liability Coverage Form, Form SS 00 08 04 01, ("BLC") includes:

### A. COVERAGES

1. **BUSINESS       LIABILITY       COVERAGE (BODILY   INJURY,   PROPERTY   DAMAGE, PERSONAL AND ADVERTISING INJURY)**

**Insuring Agreement**

**a.** We will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages because of . . . "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. . . .

. . . .

[Hartford Policy (BLC p. 1); Exhibit "1"].

### B. EXCLUSIONS

#### 1. Applicable to Business Liability Coverage

**a.** Expected or Intended Injury

. . . .

**(2)** "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

. . . .

#### p. "Personal and Advertising Injury":

. . . .

**(1)** Arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**(2)** Arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period;

. . . .

**(5)** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

. . . .

4

[Hartford Policy (BLC p. 4, 8); Exhibit "1"].

### G. LIABILITY AND MEDICAL EXPENSES DEFINITIONS

. . . .

**15.** "Personal and advertising injury" means injury . . . arising out of one or more of the following offenses:

. . . .

    **d.** Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

[Hartford Policy (BLC p. 19); Exhibit "1"].

### THE UNDERLYING *NEWBORN SUIT*

10.    On May 18, 2012, Newborn Bros. Co. ("Newborn") brought suit by filing a complaint against Albion ("Newborn Complaint") for various alleged torts arising out of Albion's alleged misuse of the phrase "Made in America" to promote and advertise its products in contrast with, and in negative comparison, to those of its competitors, including Newborn. A copy of the Newborn Complaint is attached as **Exhibit "2."**

11.    The *Newborn Suit* asserted two counts for relief—the first, false advertising and product marking in violation of Lanham Act § 43; 15 U.S.C. § 1125(a); and second, for tortious unfair competition through false statements and material omissions.

12.    Pertinent allegations include the following:

# COUNT I

132.  In the event that Albion would assemble in the United States a customer-specified pusher and nozzle onto its imported drive handle assemblies from Taiwan, such assembly does not result in a product of the United States within the meaning of the so-called tariff-shift rules of origin under the North American Free Trade Agreement ("NAFTA") administered by U.S. Customs and Border Protection for marking goods manufactured in NAFTA countries. *See* 19 C.F.R. Part 102.

139.  The assembly in the United States of a complete dispensing guns using any imported, non-North American-origin parts or components of iron or steel, including a drive handle assembly, a steel barrel, a plunger rod or pusher rod, end cap, cone, or nozzle would not result in any change in six-digit tariff classification of the imported, non-NAFTA components or parts articles to satisfy the tariff shift rule and create a product of the United States that no longer must be marked with a foreign country of origin. . . . .
. . . .

143.  In considering origin marking similar to the marking of Albion's B-Line dispensing guns, Customs has ruled that such origin marking is deceptive and contrary to the requirements of 19 C.F.R. § 134.46. *See* Customs New York Ruling Letter M87845 (November 28, 2008) ("holding that a caulk storage unit is deceptively marking when packed in a box the front panel of which was printed with an American flag and the words 'Designed in USA' and the back panel of which was marked 'Made in China.'").
. . . .

146. Under longstanding, published FTC interpretations, use of the image of the American flag may convey a claim of U.S. origin by itself or in conjunction with other phrases or images. *See* Complying With the Made in USA Standard, Federal Trade Commission 1998 at 4 and 24.
. . . .

148.  The assembly of an imported drive handle assembly and a pusher and nozzle in the United States does not result in a product that is "all or virtually all" made in the United States as is required for a product to be eligible to be marked "Made in USA" or its equivalent "Made in America" under the laws administered by the Federal Trade Commission, *i.e.,* Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45.
. . . .

150.   Upon information and belief, Albion has made and distributed, in interstate commerce and in this District, **advertisements**, products, and product packaging, **containing false statements of facts, misrepresentations, and material omissions of facts** of the geographic origin of the subject merchandise and the commercial activity of Albion in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)). **These advertisements** and products fail to disclose the actual country of origin of the subject merchandise and **falsely claim the subject merchandise is manufactured in the United States by Albion.**

151.   Albion's false advertising statements and omissions injure both consumers and Newborn.

152.   **Albion has caused**, and will continue to cause, **immediate and irreparable injury to Newborn**, **including injury to its business, reputation, and goodwill**, for which there is no adequate remedy at law. (emphasis added)

## COUNT II

158.   Albion's misrepresentations . . . include that these products are "Made in America" and Albion's failure to disclose that these products are "Made in Taiwan" are unfair competition that has injured Newborn by causing distributors to substitute the subject merchandise for Newborn's competitive goods.

[Newborn Complaint ¶¶ 139, 143, 146, 148, 150, 151, 152, p. 32–36; Exhibit "2"].

## ALBION'S NOTICE TO HARTFORD OF THE *NEWBORN SUIT* AND HARTFORD'S DENIAL OF A DEFENSE

13.   On August 26, 2013, Hartford acknowledged receipt of a copy of the Newborn Complaint, and advised Albion that no potential coverage arose under the Hartford Policy due to the absence of any covered "offense" and what it claimed were several applicable exclusions. A copy of Hartford's denial letter ("Hartford's Letter") is attached as **Exhibit "3."**

14.     On September 13, 2013, Hartford reaffirmed its denial of a defense based on the aforementioned lack of potential coverage for defense and referenced exclusions. **[Hartford's Letter, p. 1; Exhibit "3"]**.

15.     On May 10, 2017, a broker for Arthur J. Gallagher & Co. notified Hartford of Newborn's Motion for Summary Judgment filed on 4/11/16 and the JFPTO entered on 5/4/17. A copy of an email confirming this notice to Hartford is attached as **Exhibit "4."** Hartford has offered no response to that tender, which referenced its existing claim number YPQ LP 19571 assigned to its claims representative Aida Bush.

## NEWBORN'S MOTION FOR SUMMARY JUDGMENT AGAINST ALBION

16.     On April 11, 2016, Newborn filed a Motion for Summary Judgment ("MSJ") with the District Court and included a Plaintiff's Statement of Material Facts Not In Dispute ("PSF"). A copy of Newborn's MSJ is attached as **Exhibit "5**."

17.     The PSF of the MSJ includes the following pertinent statements:

> 3.     Defendant Albion Engineering Company ("Albion") is a New Jersey corporation with its principal place of business in Moorestown, New Jersey since January 2005. . . .
>
> . . . .
>
> 6.     . . . . Albion's false representations of geographic origin have injured Newborn through lost or suppressed

sales in violation of the Lanham Act and New Jersey common law. . . .

. . . .

80.    **Albion revised its Owners Guide Pub. 271 after it moved to Moorestown, New Jersey in 2005 to reflect its New Jersey address and retained the statement on the cover All Albion Products Are made in America. Exh. HHH - Albion's Owners Guide at NEW040477-NEW040478**.

81.    **Albion's product catalog 267E and its predecessor catalog 267D stated on the front cover and on the third page: "All Albion Products Are Made in America." Exhs. III and JJJ.**

. . . .

87.    **On or before June 7, 2007, Albion slightly revised "The Albion Difference" web page to read: "All of our dispensing gun products and accessories are designed and manufactured in the USA, from our location in Philadelphia, Pennsylvania."** . . . .

. . . .

91.    Albion's Deluxe and Special Deluxe dispensing guns stamped "Phila., PA. U.S.A." are available in the marketplace on display and inventory.

. . . .

117. Albion's customers inquire whether Albion's products made in USA. Exh. KKKKKK . . . Albion responded that its model 139-3 and all of its DL [the prefix for its Deluxe and Special Deluxe models] are made in the USA. . . .

. . . .

122. Lance Construction Supplies, Inc. used Albion's "Albion Made in USA" logo on its web site page marketing Albion's bulk caulking guns and accessories. Exh. BBBBB - Lance Construction, Inc. web page. NEW0223.

. . . .

124.   George Hall, a former purchaser for D.M. Figley declared that . . . had he known that Albion's products were made in Taiwan he would have purchased more from Newborn because of their comparable features and performance, their quality, and favorable pricing.

. . . .

127.   Newborn's President, Albert Lee. testified that be has heard countless times over the years at trade shows and other places that Newborn lost business because its products were made in Asia and its competitor's products were made in the United States.

[MSJ (PSF ¶ 3, 6, 80, 81, 87, 91, 117, 122, 124, 127, p. 2, 19, 21–22, 28, 29–31; Exhibit "5"].

## THE JOINT FINAL PRETRIAL ORDER THAT AMENDED THE COMPLAINT

18.     Thereafter, the District Court entered a Joint Final Pretrial Order ("JFPTO") on May 4, 2017. A copy of the JFPTO is attached as **Exhibit "6."**

19.     The JFPTO has five sections. The relevant sections for the purposes of this complaint are Part II. Stipulated Facts ("SF") and Part III. Plaintiff's Contested Facts ("PCF"), which further divides into subsections of contested facts that Newborn intends to prove with regard to liability ("Liability") **[JFPTO (PCF Liability ¶¶ 1–202, p. 9–27); Exhibit "6"]** and contested facts that Newborn intends to prove with regard to damages ("Damages"). **[JFPTO (PCF Damages ¶¶ 1–67, p. 27–32); Exhibit "6"]**.

20.     The JFPTO states in pertinent parts:

## PART II
[STIPULATED FACTS]

30.   In November of 2005, Albion began importing from Taiwan its number 816 series caulking knives.

# PART III
## [CONTESTED FACTS]

Plaintiff intends to prove the following contested facts with regard to liability:

**Albion Imports the Subject Merchandise.**

1.   The Albion merchandise subject to this action includes Albion's manual Deluxe and Special Deluxe dispensing guns ("Deluxe and Special Deluxe dispensing guns"), Albion's manual B-line dispensing guns ("B-line dispensing guns") and Albion's caulking accessories ("caulking accessories") that have been and are being marked, packaged, advertised and sold based upon false and misleading representations of the true manufacture and geographic origin of the product.

   a.   Albion's Deluxe and Special Deluxe Models.

. . . .

10.   During 2005, Albion began importing from Taiwan a drive handle subassembly referred to as 46CMN, which is a component employed to build Albion's Deluxe line of tools. At least 14 different models of Albion's Deluxe tools include this handle subassembly.

13.   Albion's Deluxe and Special Deluxe dispensing guns are sold by Albion in three basic material containment units ("MCU") variations, i.e., bulk guns, sausage guns and cartridge guns.

   b.   Albion's B-Line Model of Dispensing Gun.

. . . .

21.   Albion's B-line dispensing guns are cartridge guns, sausage guns, bulk guns, and dual cartridge epoxy

guns. Epoxy guns are a type of cartridge gun having a frame that accommodates duel material cartridges of epoxy components that dispense through a single opening or nozzle.

   c. <u>Albion's Line of Dispensing Gun Accessories.</u>

. . . .

24.   Albion sells dispensing gun accessories that include but are not limited to nozzles, spatulas, spatula kits, caulk knives and mixing paddles.

. . . .

   d. <u>Albion's Sales Model.</u>

27.   Albion has imported and continues to import the subject merchandise from Taiwan. Albion is not the U.S. manufacturer of the merchandise it imports.

. . . .

29.   Albion sells its dispensing guns and accessories under its own name and also sells products to customers for resale or distribution under the customer's name.

[JFPTO (PCF Liability ¶¶ 1, 10, 13, 21, 24, 27, 29, p. 9–12); Exhibit "6"].

**<u>Newborn's Dispensing Gun Products Compete with Albion's Products.</u>**

. . . .

32.   Newborn and Albion are the only two suppliers of a broad range of dispensing guns, parts and accessories.

33.   Newborn and Albion are direct competitors in the national market for the sale and distribution of manual dispensing guns, parts, and accessories.

. . . .

35.    Newborn and Albion are the only two competitors in the national market for steel barrel bulk dispensing guns.

. . . .

39.    PC Cox is a manufacturer of dispensing guns based in England.  PC Cox offers aluminum barrel dispensing products that are more expensive than compatible Newborn and Albion aluminum barrel products.

40.    Newborn and Albion compete for customers seeking less expensive alternatives to the PC Cox aluminum dispensing guns.

41.    Newborn's competitive dispensing guns have features that are comparable to the features of Albion's Deluxe, Special Deluxe and B-line dispensing guns with respect to the type of MCU, i.e. bulk type, sausage type, or multicomponent/epoxy type; the amount of material contained in the MCU; the types of piston rod used, e.g. smooth and ratchet rod; and the drive thrust or force to dispense the material contained therein.

42.    Newborn's competitive dispensing guns are used to dispense the same materials and/or for the same applications or uses as Albion's Deluxe, Special Deluxe and B-line dispensing guns.

. . . .

48.    Newborn specifically designed models of steel barrel bulk dispensing guns for professional users to compete against Albion's Special Deluxe and Deluxe steel barrel bulk dispensing guns, i.e., 600 series models.

49.    Newborn designed new features to compete against Albion's steel bulk models and other models of Albion dispensing `guns.

. . . .

51.   Newborn's model 600 series dispensing guns had superior features to Albion's bulk dispensing guns, including an adjust-a-stroke patented mechanism to change the thrust ratio and a rotating barrel with a lever lock.

52.   Newborn's model 600 series dispensing gun was priced lower than comparable Albion bulk dispensing guns having fewer features.

[JFPTO (PCF Liability ¶¶ 32–33, 35, 39, 40, 41–42, 48–49, 51–52, p. 12–14);

Exhibit "6"].

### Albion's Manufacturing Moves to Asia and Albion Improperly Marks Products.

. . . .

76.   Commencing as early as 2005, Albion imported from Ken Bridge in Taiwan the drive handle assembly identified as 46CMN for Albion's Deluxe model dispensing guns.

77.   Albion's 46CMN drive handle assembly is imported in a similar fashion as the Albion 760CLMN drive handle assembly described above.

78.   Albion has continued to import the 46CMN drive handle assembly from Taiwan since 2005.

79.   Albion also imported 846CLMN Special Deluxe-based handle assemblies from Kent Bridge in Taiwan on several occasions.

80.   As imported, the 846CLMN handle assemblies were stamped "Phila. P.A. U.S.A."

81.   Dispensing guns made using the imported 846CLMN handle assemblies were labeled "Made in USA."

[JFPTO (PCF Liability ¶¶ 76–81, p. 16–17); Exhibit "6"].

### Albion Improperly Marked the Imported Products.

82.    Albion required the imported Taiwan made drive handle assemblies be engraved or stamped with "Phila., PA. U.S.A." by the manufacturer in Taiwan prior to exporting to the U.S.

. . . .

88.    Albion's Special Deluxe, Deluxe, and B-Line dispensing guns parts and accessories are identified in its product catalog.

. . . .

89.    Half of the dispensing gun products Albion sells are not identified in its product catalog.

. . . .

93.    Albion applied a corporate logo stating Made in USA to the Special Deluxe dispensing guns assembled with the imported components.

94.    Albion imported from Kent Bridge in Taiwan model 380-3 dispensing guns that it resold as model 139-3 dispensing guns without any required foreign country of origin mark.

95.    Albion imported from Kent Bridge in Taiwan model 380-5 black powder coated dispensing guns.

96.    The imported model 380-3 and 380-5 dispensing guns contained gripping plates supplied by Albion from the United States.

97.    Albion did not mark its imported model 380-3 sold as model 139-3 with its Taiwan country of origin.

. . . .

100.    Albion marked "Made in USA" on dispensing guns and/or packages sold to dispensing material manufacturers – so called Original Equipment

Manufacturers ("OEM") -- who purchased Albion's dispensing guns for resale or distribution with their dispensing materials.

101.  Albion identified the country of origin of its dispensing guns made in Taiwan as "USA" origin on its commercial invoices to customers.

. . . .

[JFPTO (PCF Liability ¶¶ 82, 88–89, 93–97, 100–01, p. 17–18); Exhibit "6"].

**Albion Markets and Advertises its Products as being Made in USA.**

. . . .

114.  Albion only commenced marketing itself as an American manufacturer and advertising its dispensing gun products as being Made in USA after Albion started importing dispensing guns, assemblies and accessories from Taiwan.

115.  Albion has marketed itself as the only U.S. manufacturer of dispensing guns able to supply products Made in USA.

. . . .

117.  Albion distributed a copy of the Albion Owner's Guide with each dispensing gun products that it sold in a retail carton.

118.  The geographic origin claim "All Albion Products Are Made in America" also appeared on multiple Albion product catalogs and bulletins.

119.  Numerous Albion's product catalogs and bulletins state "All Albion Products Are Made in America" or "Albion Made in America".

120.   Albion's blanket statements that "All Albion Products Are Made in America" and "Albion Made in America" are false.

121.   Albion's product catalogs and bulletins with the county of origin claims were provided by Albion to distributors and ultimate purchasers of its products.

. . . .

[JFPTO (PCF Liability ¶¶ 114–15, 117–21, p. 20); Exhibit "6"].

## Albion's Customers and the Market Preference for USA Products.

. . . .

139.   Albion is able to charge higher prices for products that include a USA country of origin designation or that can be marketed as being Made in USA. . . .

. . . .

143.   In 2005, after Millennium Adhesives request to remove the origin marking on its B-Line guns so that they could be sold as Made in USA, Albion changed the origin marking of its B-Line guns by relocating the origin mark off the guns onto the reverse side of a removable lubrication hang tag.

144.   The removable lubrication hang tag was affixed to the dispensing gun by looping it through the handle mechanism where it had to be removed prior to use of the gun.

145.   After receiving unfavorable customer feedback, Albion used less conspicuous methods of marking Taiwan origin on its imported dispensing guns.

146.   At customer request, Albion moved the Taiwan country of origin mark to an obscure location on the dispensing gun packaging.

147.   Albion used blank adhesive paper to conceal any references to Kent Bridge and Taiwan on the packaging of some products it sold to customers.

[JFPTO (PCF Liability ¶¶ 139, 143–47, p. 22); Exhibit "6"].

## Albion Directly Misrepresented to Third Parties the Country of Origin of its Products.

148.   Albion falsely represented the geographic origin of its dispensing guns to Smalley & Co., one of the largest distributers of dispensing guns in the market.

149.   Albion falsely represented the geographic origin of its dispensing guns to a web site advertising products Made in USA, AmericanYes.com.

150.   Albion falsely represented the geographic origin of its dispensing guns to individuals who inquired whether Albion's dispensing guns were Made in USA.

151.   Albion falsely represented the geographic origin of its dispensing guns to ABC Supply, a distributor with hundreds of branches.

152.   ABC Supply published catalogs highlighting products Made in USA and including Albion dispensing guns after Albion confirmed that its products were Made in USA.

153.   Albion falsely represented the geographic origin of its dispensing guns to Sphere1, a buying group in which Newborn was the exclusive preferred supplier.

154.   Albion falsely represented the geographic origin of its dispensing guns to members of the Sealant Engineering and Associated Lines ("SEAL") trade association.

155.   Albion falsely represented the geographic origin of its dispensing guns to its own independent sales representatives.

156.   For years, Albion was a member of the Hand Tool Institute ("HTI"), which identifies its members on its website and limits membership to North America Manufacturers.   Albion recently dropped its HTI membership.

[JFPTO (PCF Liability ¶¶ 148–56, p. 22–23); Exhibit "6"].

### Albion Failed to Take Corrective Action Regarding Improperly Marked and Advertised Products.

. . . .

165.   Albion could have continued to sell Special Deluxe and Deluxe dispensing guns made with Taiwan drive handle assemblies, rods, and barrels marked Made in Taiwan but it chose not to do so.

166.   Albion has not recalled the Albion products that contain the false origin claims.

167.   Albion has not recalled its advertising materials stating a false geographic origin of its products.

168.   Albion's distributors possess advertising materials with blanket "Albion Made in America" claims.

169.   Albion has not notified any of its customers of its false USA geographic origin claims.

170.   Albion has not offered to refund or credit any of its customers who were deceived by its false USA geographic origin claims.

171.   Albion has not notified any potential customers of its past false USA geographic origin claims.

172.   Albion's falsely "Made in USA" marked Special Deluxe and Deluxe dispensing guns remain on display in the marketplace.

173.   Albion's falsely "Made in USA" marked Special Deluxe and Deluxe dispensing guns remain in inventory in the marketplace.

174.   Albion continues to mislead its independent sales representatives about the geographic origin of its products stating that they are Made in USA.

175.   Since commencing the Made in USA campaign of making and marketing, Albion has incurred costs in excess of $970,000 for advertising.

. . . .

[JFPTO (PCF Liability ¶¶ 165–75, p. 24); Exhibit "6"].

**Albion's False Statements Influenced the Market.**

. . . .

181.   Albion's false statements about its products are material to purchasers and resellers of the products.

182.   Albion's false statements about its products influenced purchasers' decisions.

183.   Purchasers in the market for dispensing guns prefer products made in the United States.

184.  As a result of Albion's false statements Albion sold more product than it would have sold had the products been properly marked.

185.  As a result of Albion's conduct, Newborn was harmed because it sold fewer products than it would have sold had the market known the true origin of Albion's products.

186.  Existing customers would have purchased more product from Newborn had they known the true origin of Albion's products.

187.  "Made in USA" country of origin claims and advertisements influence the market and end users' purchasing decisions.

188.  The only standard in commerce for "Made in USA" claims is the "all or virtually all standard adopted by the U.S. Federal Trade Commission.

   . . . .

193.  Albion falsely represented to sealant manufacturers, distributors and OEMs that the geographic origin of its products was the United States.

194.  Albion's collective geographic origin representations deceived or had the tendency to deceive a substantial segment of customers of dispensing guns, spatulas, parts, and accessories.

195.  Newborn was harmed as a result of Albion's conduct.

196.  Albion's false representations injured Newborn by taking away sales that would have gone to Newborn.

197.  Newborn started to transition Lowry's business from Albion to Newborn and Albion regained that business by representing that its products were Made in USA.

198.   George Hall a purchaser at D.M. Figley who purchased Albion and Newborn products would have bought more from Newborn when he was a purchaser had he known that Albion's dispensing guns, parts, and accessories, were made in Taiwan.

199.   Tony Carroll, a purchaser for Western Waterproofing, one of the largest waterproofing contractors in the Denver area, would have purchased more products from Newborn had he known that Albion's products were made in Taiwan.

200.   Albion contacted distributors who had agreed to sell Newborn's dispensing guns and/or accessories, and pressured the distributors to remove Newborn's products falsely asserting that Albion's products were Made in USA by Albion and preferable to Newborn's products.

201.   To displace Newborn's guns from the market, Albion offered to swap one or more of its dispensing guns for Newborn's imported dispensing guns falsely alleging that Albion's dispensing guns were Made in USA and preferable to Newborn's dispensing guns.

202.   Albion's false marketing and marking efforts injured Newborn by taking sales to distributors and diverting such sales away from Newborn and suppressing Newborn's sales.

[JFPTO (PCF Liability ¶¶ 181–88, 193–202, p. 25–27); Exhibit "6"].

[CONTESTED FACTS]

Plaintiff intends to prove the following contested facts with regard to damages:

1.   A substantial number of dispensing gun customers and ultimate purchasers have a preference for products Made in USA.

2.   Customers preferring dispensing guns Made in USA are willing to pay a premium over non-US competitive products.

3.   Albion has enjoyed a price premium by falsely marketing its products as Made in USA.

4.   Albion would charge a customer more if it wanted to advertise Albion products as Made in USA.

5.   Non-US products competing with products Made in USA are priced 15% to 30% lower to attract customers.

6.   Albion's literally false Made in USA claims on its dispensing guns, parts, and accessories has suppressed Newborn's prices and reduced its profits.

7.   Albion has branded itself as a US manufacturer and supplier of all Made in USA products on its web site, quotations, invoices, products, catalogs and bulletins, banners at distributor premises, distributor displays, price sheets, and in its electronic and personal communications to customers and potential customers.

8.   Albion has marketed itself as the only US manufacturer of dispensing guns able to supply products Made in USA.

9.   Albion distinguished its products from imported products, specifically Newborn's products, by marketing its products as all Made in USA by Albion.

10. Albion competed against Newborn distinguishing itself as being a U.S. manufacture of the products it sold.

11. Albion changed its advertisements to add Made in USA claims to compete against Newborn's imported products.

12. **Albion disparaged Newborn's products imported from Taiwan as inferior in quality to Albion's products purportedly Made in USA by**

**Albion when in fact, Albion's products were also made in Taiwan.**

. . . .

14. Newborn and Albion are the only two suppliers of a broad range of dispensing guns, parts, and accessories.

15. Newborn and Albion are the only two suppliers of steel barrel dispensing guns for bulk material competing actively in the market.

. . . .

31. Despite continuing marketing efforts, Newborn had little success selling its 600 series bulk dispensing guns against Albion's bulk dispensing guns due to a market preference for dispensing guns Made in USA.

32. Since roughly 2005, Newborn has been the exclusive preferred supplier of dispensing guns to the buying organization Sphere1 agreeing to sell its products subject to a significant price rebate due to the high volume of anticipated sales.

33. Following a period of about six years of unsuccessful efforts, Albion sought and gained acceptance as another preferred provider to Sphere1 members based on misrepresentations to the Sphere1 organization that Albion's US made dispensing guns are distinct from Newborn's imported dispensing guns.

34. **Albion has displaced Newborn as a supplier or thwarted Newborn's vigorous efforts to supply various distributors by representing itself as the only supplier of dispensing gun products Made in USA. (emphasis added)**

. . . .

39. Albion's false representations injured Newborn by taking away sales that would have gone to Newborn.

40. Newborn started to transition Lowry's business from Albion to Newborn and Albion regained that business by representing that its products were Made in USA.

41. George Hall a purchaser at D.M. Figley who purchased Albion and Newborn products would have bought more from Newborn when he was a purchaser had he known that Albion's dispensing guns, parts, and accessories, were made in Taiwan.

42. Tony Carroll, a purchaser for Western Waterproofing, one of the largest waterproofing contractors in the Denver area, would have purchased more products from Newborn had he known that Albion's products were made in Taiwan.

43. Albion contacted distributors who had agreed to sell Newborn's dispensing guns and/or accessories, and pressured the distributors to remove Newborn's products falsely asserting that Albion's products were Made in USA by Albion and preferable to Newborn's products.

44. To displace Newborn's guns from the market, Albion offered to swap one or more of its dispensing guns for Newborn's imported dispensing guns falsely alleging that Albion's dispensing guns were Made in USA and preferable to Newborn's dispensing guns.

45. Albion's false marketing and marking efforts injured Newborn by taking sales to distributors and diverting such sales away from Newborn and suppressing Newborn's sales.

46. Albion's web site representations of the USA origin of its products deceived a consumer, using the blogger name Sheslostcontrol, who purchased an Albion B-Line dispensing gun by mail order from a distributor, Sound Isolation Store, believing the dispensing gun to be Made in USA.

. . . .

53. When faced with competition from Newborn's spatulas, Albion changed its spatulas advertising bulletin by adding an American flag background and a Made in USA claim to the bulletin.

54. Albion was planning to import spatulas at the time it revised the spatulas advertising bulleting and never recalled the advertising bulletin after imports commenced.

. . . .

60. Albion's statements and communications and advertisements were literally false and misleading.

61. As a result of Albion's violation of the Lanham Act and New Jersey Law, Newborn has suffered harm.

62. Newborn would have sold more dispensing gun products to the market during the time at issue had Albion not misled the market through false statements.

63. Newborn is entitled to damages under the Lanham Act and New Jersey law.

[JFPTO (PCF Damages ¶¶ 1–12, 14–15, 31–34, 39–46, 53–54, 60–63, p. 27–32); Exhibit "6"].

## THE *NEWBORN SUIT* CLAIMS FOR "UNFAIR COMPETITION" "ARISING OUT OF INJURY" TO ITS REPUTATION ARE PREMISED FOR DEFAMATION AND DISPARAGEMENT UNDER OFFENSE (d)

### Defamation

21.     The *Newborn Suit* asserts facts that potentially implicate "personal and advertising injury" coverage for libel or slander as well as disparagement.

22.     The *Newborn Suit* alleges injury to reputation in connection with its use of the term "reputation and good will" **[Newborn Complaint ¶ 152, p. 36; Exhibit "2"]** as well as alleging that:

> 151.  Albion's false advertising statements and omissions injure both consumers and Newborn. **[Newborn Complaint ¶ 151, p. 36; Exhibit "2"].**

23.     It also alleged that:

> 158.  Albion's misrepresentations . . . include that these products are "Made in America" and Albion's failure to disclose that these products are "Made in Taiwan" are unfair competition that has injured Newborn by causing distributors to substitute the subject merchandise for Newborn's Competitive goods. **[Newborn Complaint ¶ 158, p. 41; Exhibit "2"].**

The allegations referenced below include statements injuring Newborn's reputations as noted in Newborn's MSJ. **[MSJ (PSF ¶¶ 6, 80, 81, 87, 91, 117, 122, 124, 127, pp.  2, 19, 21–22, 28–31); Exhibit "5"].**

24.     According to the JFPTO, Albion allegedly denigrated Newborn by insinuating that its product was not of comparative value since it was not "Made in America," and "disparaged Newborn's product imported from Taiwan as inferior

in quality to Albion's products purportedly made in USA by Albion when in fact, Albion's products were also made in Taiwan, thereby defaming Newborn." **[JFPTO (PCF Damages ¶ 12, p. 28); Exhibit "6"]**.

25.    Newborn's JFPTO asserts that Albion's advertisements emphasized the superior services available due to its status as a "Made in America" manufacturer.   Newborn's fact further asserted that "Albion has displaced Newborn as a supplier or thwarted Newborn's vigorous efforts to supply various distributors by representing itself as the only supplier of dispensing guns made in America." **[JFPTO (PCF Damages ¶ 34, p. 29); Exhibit "6"]**.

### Disparagement

26.    The above referenced allegations that reveal claims of defamation against Newborn also reveal disparagement of its purportedly inferior "Made in Taiwan" products.

27.    The JFPTO clarified evidence that Albion's publications purportedly both defamed Newborn and disparaged its caulking guns leading purchasers to prefer Albion's directly competing products.

28.    Albion allegedly disparaged Newborn as its products were "displaced" and its role as a "supplier" thwarted when Newborn suffered by comparison to Albion who claimed it was the only supplier of dispensing gun products "Made in USA." *Id.*

29.     Newborn also asserts that "Albion [allegedly] disparaged Newborn's products imported from Taiwan as inferior in quality to Albion's products purportedly Made in USA by Albion when in fact, Albion's products were [allegedly] also made in Taiwan." **[JFPTO (PCF Damages ¶ 12, p. 28); Exhibit "6"]**.

30.     Indeed, numerous consumers purchased Albion's goods in preference to Newborn. **[JFPTO (PCF Liability ¶¶ 148–156, 181–202, pp. 22–23, 25–27); Exhibit "6"]**.

31.     These alleged claims arose out of direct competition between Newborn and Albion **[JFPTO (PCF Liability ¶¶ 32–33, 35, 40, 41, pp. 12–13; Exhibit "6")]** with purported mismarking of Albion products as "Made in America," **[JFPTO (PCF Liability ¶¶ 93, 97, 100, 101 and 114–21, pp. 18, 20); Exhibit "6"]** which allowed Albion to charge higher prices because consumers believed its products were superior to its competitor, Newborn. **[JFPTO (PCF Liability ¶¶ 139, 143–47, pp. 23); Exhibit "6"]**.

## THE POLICY EXCLUSIONS DO NOT BAR COVERAGE

### The "First Publication" Exclusion

32.     The "first publication" exclusion in the policy states:

> This insurance does not apply to:
> **p. "Personal and Advertising Injury":**
> . . . .
>  **(2)**  Arising  out  of  oral,  written  or  electronic

publication of material whose first publication took place before the beginning of the policy period; **[Hartford's Policy (BLC p. 8); Exhibit "1"]**.

33.    Hartford's Letter asserts:

To the extent that Albion first advertised that its products were made in the USA prior to the policy inception date, there would be no potential coverage." **[Hartford's Letter, p. 3; Exhibit "3"]**.

34.    To fall within the predicate "personal and advertising" injury, a claim for defamation or disparagement within offense (d) must be asserted.

35.    The "first publication" exclusion, therefore, is limited to circumstances where the insured has engaged in an "injurious offense"—in this case, "unfair competition" premised, in part, on implicit disparagement of Newborn's products, or defamation of Newborn, that created liability prior to policy inception.

36.    There must be an actual injury to Newborn arising out of "unfair competition" before the inception of Hartford's Policy for the exclusion to apply.

37.    The following alleged dates assert importation and advertisement after Hartford's Policy inception, which evidence "fresh wrongs" that fell outside of the "first publication" exception:

Products

a.    In November 2005, Albion began importing from Taiwan its number 816 series caulking knives. **[JFPTO (SF ¶ 30, p. 9); Exhibit**

**"6"**].

b.      On March 12, 2006, Albion advertised its number 816 series caulking knives in its catalog available on its website, as revealed by "Wayback Machine" on web.archive.org. A copy of the advertisement is marked as **Exhibit "7."**

Components

e.      During 2005, Albion began importing from Taiwan a drive handle subassembly referred to as 46CMN, which is a component employed to build Albion's Deluxe line of tools. At least 14 different models of Albion's Deluxe tools include this handle subassembly. **[JFPTO (PCF Liability ¶ 10, p. 10); Exhibit "6"]**.

f.      Albion required the imported Taiwan made drive handle assemblies be engraved or stamped with "Phila., PA. U.S.A." by the manufacturer in Taiwan prior to exporting to the U.S. **[JFPTO (PCF Liability ¶ 82, p. 17); Exhibit "6"]**.

New Mode of Advertisement

g.      In 2005, Albion changed its origin making of its B-line guns by relocating the origin mark off the guns onto the reverse side of a removable lubrication hang tag. **[JFPTO (PCF Liability ¶ 143, p. 22); Exhibit "6"]**.

31

**The "Non-Conforming Goods" Exclusion**

38.     Regarding the "failure to conform" exclusion, the policy provides:

> This insurance does not apply to:
>> **p. "Personal and Advertising Injury":**
>> . . . .
>>> **(5)** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

**[Hartford's Policy (BLC p. 8); Exhibit "1"]**.

39.     In denying coverage, Hartford's Letter states:

> This exclusion applies to preclude coverage for the false advertising-type claims because such claims are premised upon Albion's alleged misrepresentations in its advertisements that the relevant goods were made in the USA. **[Hartford's Letter, p. 3; Exhibit "3"]**.

40.     "Personal and advertising" coverage for disparagement is a predicate to application of an exclusion with proof of the elements to establish implicit defamation or disparagement under offense (d).

41.     The "failure to conform" exclusion does not apply where false and misleading statements attributed to a product do not involve allegations that the products failed to rise to the level advertised.

42.     The "failure to conform exclusion" does not bar coverage for distinct liability for "unfair competition" claims premised on fact allegations that evidence defamation or disparagement have no link to positive assertions "of quality or

performance."

## Hartford's Policy's Knowledge Of Falsity/Expectation Of Injury Exclusions

43.     Hartford's Policy further includes the following exclusions:

> **B. EXCLUSIONS**
>    **1.  Applicable to Business Liability Coverage**
>     This insurance does not apply to:
>       **a.  Expected or Intended Injury**
>       . . . .
>         (2) "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".
>       . . . .
>       **p.  "Personal and Advertising Injury":**
>         (1)   Arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**[Hartford's Policy (BLC p. 4, 8); Exhibit "1"]**.

44.     Hartford's Letter regarding the exclusion states:

> One of both of these exclusions would apply to preclude coverage if Plaintiff is able to establish that Albion knew that the relevant goods were not made in the USA and/or that Plaintiff would be damaged by such false representations." **[Hartford's Letter, p. 3; Exhibit "3"]**.

45.     The duty to defend is triggered when the complaint involves an injury that is actually or *potentially* within the scope of the policy.

46.     The potential for a claim to be covered is available if a different level of knowledge or intent were to be found by the jury.

47.     To allow Hartford to exclude coverage due to "knowledge of [publication] falsity" or intentional conduct, where acts are undertaken with an expectation of inflicting disparagement or defamation, is improper where liability can arise without proof of "knowledge of falsity" or with the expectation of injuring Newborn by its products or by defamation. Neither of these torts requires the level of scienter called for by these exclusions as an essential element necessary to establish liability within the coverage of offenses. Mere labels of causes of action and the asserted inclusion of fact allegations regarding intentional conduct are not sufficient under the plain language of these exclusions (a)(2) and (p)(1) to bar a defense.

48.     Where liability is pled to only include "misrepresentations and material omissions concerning the geographic origin of the subject merchandise. . ." **[Newborn Complaint ¶ 158, p. 41; Exhibit "2"]**, there is no suggestion, much less an express statement, that the acts were undertaken with an intent to harm Newborn or with knowledge that the statements were false at the time made.

49.     Nor can a defense be vitiated at the time Hartford asserted its denial as no trier of fact has precluded indemnity following an adjudication liability in the underlying *Newborn Suit*.

## FIRST CLAIM FOR DECLARATORY RELIEF — DUTY TO DEFEND

50.     Plaintiff Albion repeats the preceding allegations in this complaint.

51.     Under 28 U.S.C. § 2201 and 2202, this Court has authority to issue declaratory judgment, and such further relief as it finds appropriate, concerning this controversy.

52.     An actual controversy exists between the parties concerning their respective rights and duties.   Namely, Albion contends, and asserts upon information and belief that Hartford denies and will deny, that Hartford is obligated under the Hartford Policy to defend Albion even after its thorough review of the Motion for Summary Judgment and Reply as well as Opposition to Cross-Motion for Summary Judgment by Albion and the Joint Final Pre Trial Order, which amends the pleadings pursuant to Rule 16(c), and state with more specificity the grounds for potential liability under the Lanham Act claims for disparagement/defamation that fall within its coverage provisions for "personal and advertising" injury under offense (d) "electronic, oral, written or other publication of material that libels or slanders a person or organization or disparages its goods, products or services."

53.     Disparagement calls for a three-part test under offense (d): (1) injury arising out of (2) publication of material (3) that disparages a[n] organization.

54.     Defamation has a three-part test as well: (1) injury arising out of (2) publication of material (3) that denigrates or disparages an organization.

55.     **First**, injury arose because Newborn asserts in its MSJ that: "George

Hall . . . . had he known that Albion's products were Made in Taiwan . . . . would have more from Newborn because of their comparable features and performance, their quality and favorable pricing." **[MSJ (PSF ¶ 124, p. 30); Exhibit "5"]**.

56.     Moreover, "Newborn lost business because its products were made in Taiwan and its competitor's products were made in the USA." **[MSJ (PSF ¶ 127, p. 31; Exhibit "5"]**.

57.     **Second**, Publication cannot be contested as Albion's alleged offensive conduct includes "false advertising statements . . . [that] injure both consumers and Newborn" **[Newborn Complaint ¶ 151, p. 36; Exhibit "2"]**; and

58.     "Albion's misrepresentations . . . that these products are 'Made in America' . . . caus[ed] distributors to substitute the subject merchandise for Newborn's competitive goods." **[Newborn Complaint ¶ 158, p. 41; Exhibit "2"]**.

59.     **Third**, according to Newborn, Albion's publications of material have denigrated its reputation, thereby defaming it, and caused injury to its products as allegedly being inferior to those of Albion as they are not "Made in America." **[Newborn Complaint ¶ 152, p. 36; Exhibit "2"]**.

60.     So understood, Newborn necessarily asserts that Albion's publications disparaged its products and defamed Newborn.

61.     Hartford's Policy requires Hartford to defend Albion in the *Newborn Suit*, and to reimburse all attorneys' fees and costs as well as pay all future

attorneys' fees and costs incurred by Albion in the defense of the *Newborn Suit*.

## PRAYER FOR RELIEF

**WHEREFORE**, Albion requests entry of judgment as follows:

1.     That this Court issue a binding judicial declaration:

a.     That Hartford's Policy obligates Hartford to defend Albion in the *Newborn Suit*, including against underlying claimant's Lanham Act claim in Count I;

b.     That Hartford's Policy obligates Hartford to reimburse all attorneys' fees and costs and pay all future attorneys' fees and costs incurred by Albion in the defense of the *Newborn Suit*.

2.     For attorneys' fees incurred in this action to establish a duty to defend under applicable New Jersey law;

3.     For prejudgment interest from the date of invoice in accordance with New Jersey Law;

4.     For costs ensued in this action; and

5.     For such other and further relief as the court may deem just and proper.

## **JURY DEMAND**

Plaintiff respectfully demands a trial by jury as to all issues so triable.

DATED:  May 17, 2017

By /s/ *Trevor J. Cooney*
Trevor J. Cooney
Archer & Greiner, P.C.
One Centennial Square
33 E. Euclid Ave.
Haddonfield, NJ 08033
(856) 616-2681
tcooney@archerlaw.com

Attorneys for Plaintiff,
ALBION ENGINEERING COMPANY

116096527v2