# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

ALBION ENGINEERING COMPANY,       No. 1:17-cv-3569 (NLH/KMW)

           Plaintiff,       **OPINION**

    v.

HARTFORD FIRE INSURANCE
COMPANY,

           Defendant.

---

APPEARANCES:

TREVOR J. COONEY
ARCHER & GREINER, PC
ONE CENTENNIAL SQUARE
PO BOX 3000
HADDONFIELD, NJ 08033-0968
    On behalf of Plaintiff

KATHERINE E. TAMMARO
MATTHEW RICHARD MAJOR
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
200 CAMPUS DRIVE
FLORHAM PARK, NJ 07932
    On behalf of Defendant

**HILLMAN**, District Judge

    This matter concerns the breadth of Plaintiff Albion Engineering Company's insurance coverage with Defendant Hartford Fire Insurance Company. Before the Court is Plaintiff's Motion for Partial Summary Judgment, Defendant's Motion to Strike Plaintiff's Motion, Defendant's Cross-Motion for Summary

Judgment, and Defendant's Motion for Leave to File a Reply.  For
the reasons that follow, the Court will deny the motion to
strike, grant the motion for leave to file a reply, and grant
summary judgment in favor of Defendant.

## I.

The Court takes its facts from Plaintiff's Statement of
Undisputed Material Facts, Defendant's Responsive and Counter-
Statement of Material Facts, and Plaintiff's Response to
Defendant's Counter-Statement of Material Facts, along with the
supporting documents to these pending motions.

Defendant issued Commercial Package Policy No. 13 SBQ
PZ6512 to Plaintiff for the period from May 1, 2005 to January
1, 2006 (the "Policy").  The Policy was renewed through January
1, 2007.  The Policy provided, in pertinent part, the following
coverage under the heading of "Business Liability Coverage":

> We will pay on behalf of the insured those sums that the
> insured becomes legally obligated to pay as damages
> because of . . . "personal and advertising injury" to
> which this insurance applies.  We will have the right
> and duty to defend the insured against any "suit" seeking
> those damages.  However, we will have no duty to defend
> damages for . . . "personal and advertising injury" to
> which this insurance does not apply.

In the "Liability and Medical Expenses Definitions" section,
"personal and advertising injury" is defined:

> "Personal and advertising Injury" means injury,
> including consequential "bodily injury," arising out of
> one or more of the following offenses:

2

. . . .

    d.    Oral, written or electronic publication of
material that slanders or libels a person or
organization or disparages a person's or
organization's goods, products or
services . . . .

The dispute over insurance coverage in this matter relates
to another action pending in this Court, <u>Newborn Bros. Co., Inc.</u>
<u>v. Albion Engineering Co.</u>, Civ. No. 12-2999 (NLH) (the "Newborn
Suit").  On May 18, 2012, Newborn Bros. Co, Inc. ("Newborn")
filed a complaint against Plaintiff in the Newborn Suit (the
"Newborn Complaint").[1]  The Newborn Complaint asserted two
counts: (1) false advertising and product marking in violation
of the Lanham Act § 43, 15 U.S.C. § 1125(a) and (2) tortious
unfair competition through false statements and material
omissions.  The Newborn Complaint provides:

> This action seeks under federal and state statutory law
> redress for Albion's deliberate and unlawful false and
> misleading advertising, product origin marking, and
> product packaging of merchandise subject to this action,
> <u>i.e.</u> [various dispensing guns and caulking accessories],
> which have been and are being marked, packaged,
> advertised and sold based on false and misleading
> representations of the true manufacturer and geographic
> origin and based on knowingly concealed and omitted
> material facts about the true manufacturer and
> geographic origin.

---

[1]    The undersigned is also the District Judge assigned to the
Newborn Suit.  The Court emphasizes that its findings and
conclusions in this case have no bearing on the Newborn Suit
outside of determining Defendant's duty to defend in the Newborn
Suit.

Namely, the Newborn Complaint alleges Plaintiff "distinguished" its caulking guns and accessories "from Newborn's equivalent and competitive goods based on country of origin, claiming that such Albion products are made in the United States of America or are manufactured or built by Albion in America." The Newborn Complaint alleges the subject merchandise was in fact made in Taiwan, like Newborn's products.

On August 26, 2013, Plaintiff notified Defendant of the Newborn Suit, sending a copy of the Newborn Complaint to Defendant. Defendant acknowledged receipt of the submission by an August 26, 2013 letter, and, on September 13, 2013, Defendant sent a letter to Plaintiff disclaiming coverage and denying a defense on the underlying suit. On May 10, 2017, Plaintiff provided Defendant with the following documents filed in the underlying suit: (1) Newborn's Motion for Summary Judgment, (2) Newborn's Statement of Facts Not in Dispute, and (3) the Joint Final Pretrial Order.

Plaintiff filed this action on May 18, 2017. On June 30, 2017, Plaintiff filed an Amended Complaint attaching a February 19, 2013 Memorandum of Law in Opposition to Albion's Motion for Leave to Amend its Answer in the Newborn suit, a Declaration of Albert S. Lee, a June 2011 e-mail from Bob Reynolds, and a March 2011 letter from Mark Schneider. Plaintiff's Amended Complaint asks for a "binding judicial declaration" that "Hartford's

Policy obligates Hartford to defend Albion in the Newborn Suit, including against underlying claimant's Lanham Act claim."

Plaintiff filed a July 5, 2017 Motion for Partial Summary Judgment. Additional communications were attached between Schneider and other Albion employees, as well as communications with a potential purchaser and a customer. Defendant responded to this motion with a July 13, 2017 Motion to Strike and an August 7, 2017 Cross-Motion for Summary Judgment. On September 5, 2017, Defendant filed a Motion for Leave to File a Reply in further support of its Cross-Motion for Summary Judgment.

## II.

This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Plaintiff is a New Jersey corporation with its principal place of business in New Jersey, making it a citizen of New Jersey. Defendant is a Connecticut corporation with its principal place of business in Connecticut, making it a citizen of Connecticut. As the parties' citizenship is diverse and the amount in controversy is in excess of $75,000, exclusive of interest and costs, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

## III.

The Court begins by addressing Defendant's July 13, 2017 Motion to Strike. Defendant argues Plaintiff's Motion for Partial Summary Judgment violated two Local Civil Rules: Local

Civil Rule 7.2(d) and Local Civil Rule 5.3.  Defendant argues

Local Civil Rule 7.2(d) was violated due to Plaintiff's alleged

"attempt to circumvent the Court's page limit" by using "138

single-spaced footnotes."  Defendant argues Local Civil Rule 5.3

was violated because Plaintiff's "statement of undisputed

material facts relies, in part, upon heavily redacted exhibits

that were filed without leave of Court, without a sealing order

and without any justifiable basis."  Defendant asks this Court

to strike the motion and require its refiling in accordance with

the Court's Local Civil Rules.

Local Civil Rule 7.2(b) provides that briefs are not to

exceed forty pages and that "[b]riefs of greater length will

only be accepted if special permission of the Judge . . . is

obtained prior to submission of the brief."  Local Civil Rule

7.2(d) provides:

> Each page of a brief shall contain double-spaced text
> and/or single spaced footnotes or inserts.  Typeface
> shall be in 12-point non-proportional font (such as
> Courier New 12) or an equivalent 14-point proportional
> font (such as Times New Roman 14).  If a 12-point
> proportional font is used instead, the page limits shall
> be reduced by 25 percent (e.g., the 40 page limit becomes
> 30 pages in this font and the 15 page limit becomes 11.25
> pages).  Footnotes shall be printed in the same size of
> type utilized in the text.

The Court finds Local Civil Rule 7.2 was not violated by

Plaintiff.  Plaintiff's brief consists of forty pages and 138

footnotes.  Of these 138 footnotes, all consist of citations

except the first two, which present mere background information.[2]
Under these circumstances, the Court will not strike Plaintiff's
motion.  Not only does it not appear to be an attempt to
circumvent the Court's page requirements, but the Court finds it
does not explicitly violate the Court's Local Civil Rules, nor
does it violate the spirit of this Court's Local Civil Rules.
See Allyn Z. Lite, N.J. Federal Practice Rules, Comment 4 to L.
Civ. R. 7.2 (Gann 2018).  While the Court does not seek to
encourage or endorse the overuse or disingenuous use of
footnotes, it will not find a violation of Local Civil Rule 7.2
here.

Local Civil Rule 5.3 governs confidentiality orders and the
restriction of public access on the Court's docket.  Local Civil
Rule 5.3(b)(6) provides: "Absent extraordinary circumstances, a
party shall not file a motion or other materials with redacted
information, absent a confidentiality order which expressly
grants leave to file under seal or other appropriate leave of
Court."

Defendant indicates that Exhibits 17, 18, and 19 to
Plaintiff's Motion for Partial Summary Judgment are heavily

---

[2]    The Court notes that several citations contain explanatory
parentheticals.  Any argument that such parentheticals,
containing additional support for Plaintiff's arguments, are an
attempt to evade this Court's page limits is unpersuasive,
particularly given the minimal use of such explanatory
parentheticals.

redacted. These documents are Newborn's February 19, 2013 Memorandum of Law in Opposition to Defendant Albion Engineering Co.'s Motion for Leave to Amend its Answer, the April 11, 2016 Newborn Motion for Summary Judgment and Statement of Material Facts Not in Dispute, and the May 23, 2016 Albion Memorandum of Law in Opposition to Plaintiff Newborn's Motion for Summary Judgment. These documents, all taken from the Newborn Suit, are indeed heavily redacted.

The Court begins by noting that the fact that a Discovery Confidentiality Order was previously entered in the Newborn Suit, and that the Court granted various motions to seal, does not mean that the same redactions in that suit are proper here. See, e.g., TD Bank, N.A. v. Hill, No. 12-7188, 2015 U.S. Dist. LEXIS 97409, at *15-17 (D.N.J. July 27, 2015) (finding that "the document was sealed in [a prior lawsuit] does give the Court pause," but that the plaintiff needed to demonstrate in the present case that the Rule 5.3 factors were satisfied); Emmanouil v. Roggio, No. 06-1068, 2007 U.S. Dist. LEXIS 28831, at *7-8 (D.N.J. Apr. 19, 2007) ("The Court understands that a prior order was entered and takes guidance from this decision, however the entry of a prior order sealing information is not wholly dispositive of instant motion. . . . The Court must determine whether the sensitivity of the information meets the high burden of sealing under the conditions of this case as they

currently exist, rather than blindly relying on a prior sealing order.").

Ordinarily, the Court would find that Local Civil Rule 5.3 was violated by Plaintiff's filing of these redacted documents without an order from this Court and without the providing of unredacted versions. The Court finds "extraordinary circumstances" to be present here, however, given the unique procedural posture of this case in conjunction with the Newborn Suit. The sole issue before the Court today is Defendant's duty to defend in the Newborn Suit. "[F]acts outside the complaint may trigger the duty to defend." <u>SL Indus. v. Am. Motorists Ins. Co.</u>, 607 A.2d 1266, 1272 (N.J. 1992).

> [T]he duty to defend is triggered by facts <u>known</u> to the insurer. Although the insurer cannot ignore known information simply because it is not included in the complaint, the insurer has no duty to investigate possible ramifications of the underlying suit that could trigger coverage. Rather, the insured being sued is responsible for promptly conveying to its insurance company the information that it believes will trigger coverage.

<u>Id.</u>

Newborn's Motion for Summary Judgment and the accompanying Statement of Facts Not in Dispute were provided on May 10, 2017 in their redacted form. Thus, only the unredacted parts of those documents can support a duty to defend. As the Court finds no indication that any of these documents were ever provided to Defendant in an unredacted form, the Court finds

that the redacted information in these documents is inconsequential in determining Defendant's duty to defend and in this Court rendering its decision. Accordingly, these facts, even if supportive of coverage, would not trigger the duty to defend, as they were not facts known to Defendant. As these documents were presumably docketed as evidence of what was provided to Defendant, and as only documents that have in fact been provided to Defendant can be used to support the duty to defend, the Court finds the unique circumstances of this case allow for the filing of these two documents in their redacted form.[3]

The Court reaches a somewhat different conclusion as to the February 19, 2013 Memorandum of Law in Opposition to Defendant Albion Engineering Co.'s Motion for Leave to Amend its Answer. This February 19, 2013 Memorandum was not provided to Defendant until it was filed with Plaintiff's Amended Complaint on June 30, 2017. It appears axiomatic to this Court that a complaint asserting there is a duty to defend can only ask this Court to find a duty to defend as of the date the complaint was filed. Accordingly, the Court finds it is improper for this Court to

---

[3]    Further, as this Court finds below in favor of Defendant on the pending summary judgment motions, the Court finds no prejudice will result to Defendant for not having this redacted information available to it in briefing these motions.

consider material that was not provided to Defendant as of the filing of the Amended Complaint.  For this case, that includes the documents provided to Defendant for the first time with the Amended Complaint, as well as the documents provided to Defendant for the first time with the filing of the July 2017 summary judgment motion.  While the Court will not require they be stricken from the record, the Court will not consider them in evaluating these pending summary judgment motions.

### IV.

Also before reaching the merits of the summary judgment motions, the Court will consider Defendant's September 5, 2017 Motion for Leave to File a Reply in further support of its Cross-Motion for Summary Judgment.[4]  Plaintiff filed an eighteen-page opposition to Defendant's request.

"It is axiomatic that reply briefs should respond to the respondent's arguments or explain a position in the initial brief that the respondent has refuted."  <u>Bayer AG v. Schein Pharm.</u>, 129 F. Supp. 2d 705, 716 (D.N.J. 2001) (quoting <u>Elizabethtown Water Co. v. Hartford Casualty Ins. Co.</u>, 998 F.

---

[4]     Local Civil Rule 7.1(h) provides, in pertinent part: "No reply brief in support of the cross-motion shall be served and filed without leave of the assigned district or magistrate judge.  The original moving party shall file a single combined reply brief in support of its motion and in opposition to the cross-motion, which shall not exceed 40 pages."

Supp. 447, 458 (D.N.J. 1998)); accord Dana Transp., Inc. v.
Ableco Fin., LLC, No. 04-2781, 2005 U.S. Dist. LEXIS 18086, at
*16 (D.N.J. Aug. 17, 2005) ("The purpose of the reply brief is
to respond to the opposition brief or explain a position that
the respondent has refuted.").

The Court finds that, while the reply brief contains
arguments that are repetitive to this Court, no new arguments
are presented, and Defendant appears to be responding to
positions it initially advanced that Plaintiff refuted.  As this
is a matter of the Court's discretion and the Court finds
Defendant's Motion to File a Reply contains permissible
arguments and was advanced in good faith, this Court will grant
the motion.

In making this decision, the Court also notes that
Plaintiff, in opposing this motion, used its opportunity to file
another brief to be read by the Court to argue the merits of the
pending summary judgment motions.  To the Court, the opposition
brief appears to act like a sur-reply brief to the cross-motion
for summary judgment.  See, e.g., Pl. Opp. Br. 4 ("Hartford's
citation to Gauntlett fails to advise the Court that the appeal
was dismissed after a favorable settlement as the district court
decision was poised for reversal." (footnote and citation
omitted)); id. ("Urban Outfitters . . . is inconsistent with
C.R. Bard, as Albion explained." (footnote omitted)); id. at 4-5

("Hartford ignores that <u>Kim</u> had no allegations of 'inferiority' of the claimant's product, nor could any 'substandard' product be inferred from the claimant's 'false patent marking' claim. By contrast, Newborn described the disparaging impact of Albion's advertisements that made Newborn's products appear inferior, as '[Albion] is the only USA manufacturer' in a market that prefers USA-made products." (alteration in original) (footnote omitted) (citation omitted)); <u>id.</u> at 6 ("[A]dvertisements implicitly suggest that Newborn's 'Maid in Taiwan' products were inferior to those 'Made in America.'"); <u>id.</u> at 7 ("'Knowledge of Falsity' cannot bar a defense even if Albion allegedly 'knowingly misrepresented that its products were "Made in America"' because, e.g., 'willfulness on the Lanham Act claims . . . does not . . . determine whether . . . advertisements were "false."'" (citation omitted)).

The Court will grant the Motion to File a Reply and will consider those arguments advanced in Defendant's reply brief. The Court will not consider those arguments propounded in Plaintiff's opposition to Defendant's Motion to File a Reply.[5]

---

[5]    Defendant argues the procedural posture of this case makes any denial of its request to file a reply brief inequitable:

> After Hartford filed its cross-motion, Albion took advantage of two procedural rules prior to filing its "combined reply" – <u>i.e.</u>, Albion's reply in support of its motion and in opposition to Hartford's cross-motion. First, Albion applied for the automatic two-week

**V.**

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing

---

extension carrying its original motion and Hartford's cross-motion to September 5, 2017 from August 21, 2017. The two-week extension provided Albion extra time to prepare its opposition to Hartford's cross-motion and, by extension, its reply in support of its motion for partial summary judgment. Second, and more importantly, Albion was permitted to file a 40-page combined reply instead of the usual 15-page reply – i.e., an increase of more than 250% – because it was the "original moving party." The only reason Albion is the "original moving party" is because it strategically chose to file a motion for partial summary judgment three business days after it filed its amended pleading. Thus, it would be inequitable and an injustice if Albion were permitted twice the amount of briefing as Hartford in this case.

The Court's decision does not rely on Plaintiff utilizing an extension device provided under the Local Civil Rules, nor does the Court's decision rely on Plaintiff filing a brief it is permitted to file under the Court's Local Civil Rules.

substantive law, a dispute about the fact might affect the
outcome of the suit. Id. "In considering a motion for summary
judgment, a district court may not make credibility
determinations or engage in any weighing of the evidence;
instead, the non-moving party's evidence 'is to be believed and
all justifiable inferences are to be drawn in his favor.'"
Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)
(citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of
demonstrating the absence of a genuine issue of material fact.
Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment
always bears the initial responsibility of informing the
district court of the basis for its motion, and identifying
those portions of 'the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any,' which it believes demonstrate the absence
of a genuine issue of material fact."); see Singletary v. Pa.
Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although
the initial burden is on the summary judgment movant to show the
absence of a genuine issue of material fact, 'the burden on the
moving party may be discharged by "showing" – that is, pointing
out to the district court – that there is an absence of evidence
to support the nonmoving party's case' when the nonmoving party
bears the ultimate burden of proof." (citing Celotex, 477 U.S.

at 325)).

Once the moving party has met this burden, the nonmoving
party must identify, by affidavits or otherwise, specific facts
showing that there is a genuine issue for trial. <u>Celotex</u>, 477
U.S. at 324. A "party opposing summary judgment 'may not rest
upon the mere allegations or denials of the . . . pleading[s].'"
<u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001). For
"the non-moving party[] to prevail, [that party] must 'make a
showing sufficient to establish the existence of [every] element
essential to that party's case, and on which that party will
bear the burden of proof at trial.'" <u>Cooper v. Sniezek</u>, 418
F. App'x 56, 58 (3d Cir. 2011) (citing <u>Celotex</u>, 477 U.S. at
322). Thus, to withstand a properly supported motion for
summary judgment, the nonmoving party must identify specific
facts and affirmative evidence that contradict those offered by
the moving party. <u>Anderson</u>, 477 U.S. at 257.

**VI.**

"[T]he duty to defend comes into being when the complaint
states a claim constituting a risk insured against." <u>Voorhees</u>
<u>v. Preferred Mut. Ins. Co.</u>, 607 A.2d 1255, 1259 (N.J. 1992)
(alteration in original) (quoting <u>Danek v. Hommer</u>, 100 A.2d 198
(N.J. Super. Ct. App. Div. 1953), <u>aff'd</u>, 105 A.2d 677 (1954)).
"Whether an insurer has a duty to defend is determined by
comparing the allegations in the complaint with the language of

16

the policy. When the two correspond, the duty to defend arises, irrespective of the claim's actual merit." Id. Moreover, "[t]hat the claims are poorly developed and almost sure to fail is irrelevant to the insurance company's initial duty to defend." Id.

> The duty to defend "is not abrogated by the fact that the cause of action stated cannot be maintained against the insured either in law or in fact – in other words, because the cause is groundless, false or fraudulent. Liability of the insured to the plaintiff is not the criterion; it is the allegation in the complaint of a cause of action which, if sustained, will impose a liability covered by the policy.

Id. (quoting Danek, 100 A.2d 198).

"If the complaint is ambiguous, doubts should be resolved in favor of the insured and thus in favor of coverage." Id. "As a practical matter, the determination of an insurer's duty to defend requires review of the complaint with liberality to ascertain whether the insurer will be obligated to indemnify the insured 'if the allegations are sustained.'" Abouzaid v. Mansard Gardens Assocs., LLC, 23 A.3d 338, 346 (N.J. 2011) (quoting Danek, 100 A.2d 198). "[I]f 'the complaint comprehends an injury which may be within the policy,' a duty to defend will be found." Id. (quoting Danek, 100 A.2d 198). "In other words, 'potentially coverable' claims require a defense." Id. (quoting Stafford v. T.H.E. Ins. Co., 706 A.2d 785 (N.J. Super. Ct. App. Div. 1988)).

The issue before this Court is whether the Newborn Suit asserts a claim for "injury . . . arising out of . . . publication of material that slanders or libels a person or organization or disparages a[n] . . . organization's goods, products or services."  If not, there is no duty to defend in this case.

The Newborn Complaint pleads that Albion's "advertisements and products fail to disclose the actual country of origin of the subject merchandise and falsely claim the subject merchandise is manufactured in the United States by Albion," in violation of the Lanham Act.  It is alleged that "Albion's false advertising statements and omission injure . . . Newborn."  The gravamen of the Newborn Complaint is as follows:

> Albion's misrepresentations and material omissions concerning the geographic origin of the subject merchandise include that these products are "Made in America" and Albion's failure to disclose that these products are "Made in Taiwan" are unfair competition that has injured Newborn by causing distributors to substitute the subject merchandise for Newborn's competitive goods.

The Newborn Complaint asserted two counts: (1) false advertising and (2) unfair competition.  For the reasons that follow, the Court finds there is no claim for disparagement or defamation within the Newborn Complaint.  The Court focuses on disparagement first.

"New Jersey law . . . recognizes an action for product

disparagement, sometimes referred to as trade libel, which is a
statement consisting of four elements: (1) publication; (2) with
malice; (3) of false allegations concerning plaintiff's property
or product; and (4) causing special damages, i.e., pecuniary
harm." Gillon v. Bernstein, 218 F. Supp. 3d 285, 294 (D.N.J.
2016); accord System Operations, Inc. v. Sci. Games Dev. Corp.,
555 F.2d 1131, 1140 (3d Cir. 1977); N.J. Auto Ins. Plan v.
Sciarra, 103 F. Supp. 2d 388, 409 (D.N.J. 1998) ("[T]he elements
of . . . the tort of product disparagement in New Jersey are 1)
publication, 2) with malice, 3) of false allegations about the
plaintiff's product or property, 4) that causes special
damages."); Dairy Stores, Inc. v. Sentinel Pub. Co., 516 A.2d
220, 238 (N.J. 1986) (Garibaldi, J., concurring) ("[T]his Court
set forth the elements of the tort of product disparagement
under New Jersey law as (1) publication (2) with malice (3) of
false allegations about the plaintiff's product or property (4)
that cause special damages (pecuniary harm)."); Patel v.
Soriano, 848 A.3d 803, 835 (N.J. Super. Ct. App. Div. 2004)
("The elements of a disparagement action include proof of
publication of material derogatory to the quality of a
plaintiff's business, or to his business in general, of a kind
calculated to prevent others from dealing with him, or otherwise
to interfere adversely with his relations with others."). The
Court's analysis focuses on the element "concerning plaintiff's

property or product."

The Court finds <u>S. Bertram, Inc. v. Citizens Insurance Co.</u> <u>of America</u>, 657 F. App'x 477 (6th Cir. 2016) instructive.[6] There, Bertram was sued for trademark infringement by Eden Foods. <u>Id.</u> at 478. The underlying lawsuit stemmed from Bertram labeling foods "Eden Quality Products," which allegedly caused Eden Foods reputational harm after a recall was issued on some of Bertram's products. <u>Id.</u> Bertram's insurance policy excluded coverage for trademark infringement, and the insurer consequently refused to defend the lawsuit. <u>Id.</u> Bertram attempted to claim the underlying lawsuit included a claim for disparagement, which would be covered under the policy. <u>Id.</u>

Bertram argued the underlying lawsuit included a disparagement claim "because Eden Foods alleged that Bertram harmed the reputation of its 'Eden' trademark when consumers mistakenly attributed Bertram's recalled apple juice to Eden Foods." <u>Id.</u> at 480. The court noted that, for a disparagement

---

[6] Defendant dedicates a section of its opposition brief to discuss "choice of law." Namely, Defendant points out the "multitude of cases" Plaintiff relied on from outside New Jersey and asks the Court to "look primarily to New Jersey law, much issued since 1997, in deciding this matter." The Court first recognizes that Defendant similarly cites and relies on case law that does not apply New Jersey law. The Court recognizes that New Jersey law governs this case. Nonetheless, the Court will address cases from outside New Jersey and outside the Third Circuit that it finds instructive or persuasive in deciding these pending motions, given that case law on this specific issue is not extensive.

claim, there must be a "false, derogatory, or disparaging communication about a competitor's product." Id. at 481. The Court found "Eden Foods did not allege in its complaint or discovery responses that Bertram made any statements about Eden Foods' products, disparaging or otherwise. Rather, Eden Foods alleged harm from Bertram's publication of the FDA recall notice regarding Bertram's product." Id. The Court concluded "Eden Foods did not allege actual or potential claims for disparagement." Id. at 482.

Similarly, the Court finds Welch Foods, Inc. v. National Union Fire Insurance Co., No. 09-12087, 2010 U.S. Dist. LEXIS 110004 (D. Mass. Oct. 1, 2010) persuasive. There, the insured sold a juice described as "White Grape and Pomegranate" juice, which featured a pomegranate on its label when its primary ingredients were white grape and apple juice. Id. at *1-2. A competitor brought suit against the insured for misleading advertising. Id. at *2. The court found the advertisements "did not disparage [the competitor] or its products by making false claims about them; rather [the insured] is alleged to have misrepresented the content of its own product." Id. at *8-9. The court found "[t]he gravamen of the underlying claim [t]here [wa]s false advertising, not product disparagement," and found that the claims in the underlying complaint were not covered. Id. at *10.

The Court further finds <u>Kim v. Truck Insurance Exchange</u>, 686 F. App'x 399 (9th Cir. 2017) instructive.  There, the Ninth Circuit found that "[t]he false patent mark at issue, 'Patented. Made in USA,' did not constitute disparagement because it did not expressly or impliedly refer to the plaintiff's product." <u>Id.</u> at 400.  Several other cases cited by Plaintiff and Defendant are in line with these decisions.  <u>See, e.g.</u>, <u>Charter Oak Ins. Co. v. Maglio Fresh Foods</u>, 629 F. App'x 239, 245 (3d Cir. 2015) (applying Pennsylvania law and concluding that an underlying suit did not include a claim for disparagement where the theory of liability "was never that [the insured] made disparaging statements about [another]'s product, but that it unfairly competed by making false statements about its own products."); <u>Vitamin Health, Inc. v. Hartford Cas. Ins. Co.</u>, 186 F. Supp. 3d 712, 718 (E.D. Mich. 2016) ("The Court finds that there can be no disparagement where . . . a policy holder is alleged to have misrepresented the content of its <u>own</u> product, and not its competitor's.").

The Court finds these cases in line with New Jersey law on disparagement.  Under New Jersey law, the allegedly disparaging publication must concern the plaintiff in the Newborn Suit or its products.  The allegation that Plaintiff falsely represented that its products were made in the United States when they were in fact made in Taiwan contains no statement that references

Newborn, explicitly or implicitly.

Both parties cite an extensive number of cases in support of their positions in addition to those the Court relied on above.  The Court has read the briefing, and has considered all of these cases, but the Court will not address them all in this Opinion.  The Court briefly addresses the following.

In E.piphany, Inc. v. St. Paul Fire & Marine Insurance Co., 590 F. Supp. 2d 1244 (N.D. Cal. 2008), the underlying complaint alleged that the insured "was the 'only' producer of 'all Java' and 'fully J2EE' software solutions, which was an 'important differentiator' between competing products, even though some competitors offered products with these exact features."  Id. at 1253.  The court found "these allegations show a claim for disparagement" by implication, as it "suggests that competitor products did not have such capabilities."  Id.  The Court finds this case, and others that decided along the same lines, distinguishable from this case.  There are no allegations in the Amended Complaint that claim Albion advertised its products as the only ones that were made in the United States.  Plaintiff admits in its moving brief that "Albion did not advertise its 'Made in America' products as the only caulking gun products so made."[7]  While Plaintiff appears to argue that Newborn's claim

---

[7]    Later in this Opinion, the Court discusses conflicting statements by Plaintiff regarding whether Plaintiff ever

that it would have sold more caulking gun products if Albion had not advertised its products as being "Made in America" provides a basis for a disparagement claim, the Court is not convinced that has the same effect.[8]

This is also not a case where Plaintiff was comparing its products to Newborn, explicitly or implicitly. See, e.g., Unwired Sols., Inc. v. Ohio Sec. Ins. Co., 247 F. Supp. 3d 705, 709 (D. Md. Mar. 29, 2017) ("Some courts have found disparagement based on false equivalence where the insured allegedly made false or misleading statements claiming its products were equivalent to those of a competitor. But these cases tend to involve allegations that the insured explicitly compared its product to that of a competitor – precisely what is absent here." (citation omitted)); Hanover Ins. Co. v. Anova

---

represented its products as the only caulking gun products to be made in the United States.

[8]    The Court also takes judicial notice that, in the Newborn Suit, it is clear that this was not a two-member market. See M & M Store Co. v. Pennsylvania, 388 F. App'x 156, 162 (3d Cir. 2010); accord Gage v. Warren Twp. Comm. & Planning Bd. Members, 463 F. App'x 68, 71 (3d Cir. 2012) ("The District Court may take judicial notice of the record from a previous court proceeding between the parties."). The record in the Newborn Suit reveals, and both parties would agree, that Albion is not the only U.S. manufacturer of caulk guns and that Albion, which produces some of its guns overseas, and Newborn are not the only U.S. sellers of foreign-made caulk guns. Thus, absent an advertisement that Albion's products were the only ones "Made in America," any statement made about Albion and its products does not necessarily comment on Newborn, as Newborn is only one of several market participants.

Food, LLC, No. 14-281, 2016 U.S. Dist. LEXIS 847349 (D. Haw.
June 29, 2016) ("It is enough for the insured to compare its
product or service to its competitor's product or service in
order to detract from the reputation of its competitor.
Disparagement can also result from false comparisons between
products in which the comparison dishonors the product being
compared." (citation omitted)).

The Court finds Michael Taylor Designs, Inc. v. Travelers
Property Casualty Co. of America, 761 F. Supp. 2d 904, 912 (N.D.
Cal. 2011) in line with these "comparison" cases.  Plaintiff
relies on this case, which stated that the underlying complaint
"did not have a claim for disparagement or trade libel at the
forefront of their legal theories," but nevertheless found the
allegations in the complaint "sufficient to reveal the
possibility of a covered claim."  Id. at 911, 912.  In Michael
Taylor, the underlying complaint alleged promotional materials
were circulated by the insured which showed the underlying
plaintiff's products, leading to market confusion.  Id. at 910-
11.  In Michael Taylor, there was an implicit comparison between
the products in the inclusion of the competitor's products in
the materials.  The insured's use of the competitor's products
specifically targeted the competitor in a way not present in

this case.[9]

Nor does this Court find there is a case of implicit comparison here, as there was in <u>Jar Laboratories, LLC v. Great American E&S Insurance Co.</u>, 945 F. Supp. 2d 937 (N.D. Ill. 2013), relied on by Plaintiff.  In that case, the underlying case revolved around allegedly misleading statements made by the insured, the distributor of LidoPatch, that allegedly injured the distributor of Lidoderm.  <u>Id.</u> at 939.  Advertisements made by the distributor of LidoPatch stated things like "like the prescription brand" or "same active ingredient as leading prescription patch."  <u>Id.</u> at 940-41.  The insurer argued the complaint could not be read to allege the insured' statements disparaged Lidoderm because the statements related only to the insured's own product.  <u>Id.</u> at 943.  The court disagreed, finding that the fact that "plaintiff's statements did not identify Lidoderm by name is immaterial," as "[w]hatever words plaintiff used," it was understood "that plaintiff's implicit 'message' was <u>about</u> Lidoderm."  <u>Id.</u>  The court found the insured's "literal statements can reasonably be read to identify Lidoderm[] explicitly, if not by name."  <u>Id.</u>  In this case,

---

[9]     The <u>Swift</u> court said that, "[w]hatever the merits of <u>Michael Taylor</u>'s reasoning, the facts in this case do not include the kind of bait-and-switch tactics alleged in <u>Michael Taylor</u>."  <u>Hartford Cas. Ins. Co. v. Swift Distribution Inc.</u>, 326 P.3d 256, 265 (Cal. 2014).  This Court agrees.

Plaintiff did not in any way identify Newborn.

In the same vein, Plaintiff also relies on <u>First One</u>
<u>Lending Corp. v. Hartford Casualty Insurance Co.</u>, No. 13-1500,
2017 U.S. Dist. LEXIS 36548 (C.D. Cal. Mar. 13, 2017). In that
case, the underlying suit by the Neighborhood Assistance
Corporation of America (NACA) accused the insured of violation
of the Lanham Act and common law unfair competition for its
fraudulent mortgage modification scam targeting vulnerable
homeowners seeking mortgage modifications. <u>Id.</u> at *3-4. NACA
alleged that the insured "passe[d] itself off as a non-profit
organization with a mission to provide NACA-like housing
counseling services free of charge to homeowners," when it in
fact did not and that the insured misrepresented its "connection
or association with NACA." <u>Id.</u> at *4. The court found
sufficient allegations of disparagement to come within the
policy, finding "NACA's complaint includes allegations that
Plaintiffs made false statements that referred to NACA's
business and derogated NACA because Plaintiffs gave people the
false impression that NACA wasn't free of charge and made people
believe that NACA was being deceptive." <u>Id.</u> at *8. Plaintiff
here did not so connect itself with Newborn such that a
disparagement claim can be found on a similar theory.

The Court recognizes that <u>Safety Dynamics, Inc. v. General</u>
<u>Star Indemnity Co.</u>, 475 F. App'x 213 (9th Cir. 2012) runs

contrary to this Court's decision. There, "the underlying
action only allege[d] that [the insured] made misrepresentations
about its own product." Id. at 213-14. The Ninth Court
decided: "The complaint alleges that Safety Dynamic's false
claims about its own product had the result of misleading
consumers because it made Safety Dynamic's product look better
versus ShotSpotter's. This is sufficient to state a covered
claim for product disparagement, at least in the context of the
duty to defend." Id. at 214.

Similarly, while the Court finds Pennfield Oil Co. v.
American Feed Industry Insurance Co. Risk Retention Group, Inc.,
No. 05-315, 2007 U.S. Dist. LEXIS 21456 (D. Neb. Mar. 12, 2007)
factually similar to this case, the Court is not convinced by
the reasoning of this case. In Pennfield Oil, there was an
underlying action by Alpharma against Pennfield with regard to
Pennfield's advertising and promotion of its animal-drug-feed-
additive. Id. at *3. Alpharma "alleged that Pennfield
disseminated the false assertion that it had FDA approval for
multiple uses in advertising and loose-leaf inserts, as well as
in its labeling and in entries it made in trade publications."
Id. at *4. Alpharma argues "it was injured by the false
representations because Alpharma is the only entity with FDA
approval for multiple uses." Id. The court found "[t]he
advertisements and materials at issue implicitly disparage

Alpharma's product because Alpharma is the only other

manufacturer of the product with FDA approval." Id. at *24.

The court found a duty to defend that claim. Id. at *24-25.

The Court is not required to follow these cases, which do

not apply New Jersey law and are not from the Third Circuit.

The Court finds these cases do not support finding a claim for

disparagement in the Newborn Suit where New Jersey law is clear

that a disparagement claim must include allegations that a

statement was made concerning the complaining party, i.e.,

Newborn in this case. Accordingly, this Court chooses not to

follow these non-binding opinions which are unpersuasive to this

Court.[10]

---

[10]    Plaintiff argues the California test for disparagement set
forth in Swift, 326 P.3d 256 supports its claim that a duty to
defend exists. That court defined the elements of disparagement
as follows: "A false or misleading statement (1) must
specifically refer to the plaintiff's product or business, and
(2) must clearly derogate that product or business." Id. at
261. It stated that "[e]ach requirement must be satisfied by
express mention or by clear implication." Id.

    [T]he related requirements of derogation and specific
    reference may be satisfied by implication where the suit
    alleges that the insured's false or misleading statement
    necessarily refers to and derogates a competitor's
    product. A publication that claims a superior feature
    of a business or product as distinct from all
    competitors, such as a claim to be the "only" producer
    of a certain kind of software or the "only" owner of a
    trademark, may be found to clearly or necessarily
    disparage another party even without express mention.
    To find specific reference in these circumstances is
    consistent with limiting disparagement claims "to those
    who are the direct object of criticism and denying it to

Finally, the Court addresses the supplemental documentation Plaintiff provided to Defendant after providing notice of the Newborn Suit and providing a copy of the Newborn Complaint. "Although courts generally look to the complaint to ascertain the duty to defend, the analysis is not necessarily limited to the facts asserted in the complaint." Abouzaid, 23 A.3d at 347. "Thus, for example, an insurer's duty to provide a defense may also be triggered by 'facts indicating potential coverage that arise during the resolution of the underlying dispute.'" Id. (quoting SL Indus., 607 A.2d 1266). "That notion is said to align with the expectations of insureds, who 'expect their coverage and defense benefits to be determined by the nature of the claim against them, not by the fortuity of how the plaintiff, a third party, chooses to phrase the complaint against the insured.'" Id. (quoting SL Indus., 607 A.2d 1266).

There appear to be four stages in which Defendant was provided with information regarding the Newborn Suit. First, on August 26, 2013, Defendant proffers in its Counter-Statement of

---

those who merely complain of nonspecific statements that they believe cause them some hurt."

Id. at 263 (quoting Blatty v. N.Y. Times Co., 728 P.2d 1177 (Cal. 1986)). The Court finds this statement of California law that a disparagement claim must "specifically refer to the plaintiff's product or business" similar to New Jersey law, and the Court finds that, even if this were the binding applicable law, Plaintiff would have failed to prove a duty to defend under that test as well.

Material Facts it was provided a copy of the Newborn Complaint.
Plaintiff's response does not contest this. This Court has
already concluded the Newborn Complaint did not include
allegations sufficient to support this Court finding a duty to
defend under a disparagement theory.

Second, Defendant proffers that on May 10, 2017, it was
provided with Newborn's Motion for Summary Judgment, the
accompanying Statement of Facts Not in Dispute, and the Joint
Final Pretrial Order. Plaintiff's response does not contest
this. From this Court's reading, Newborn's Statement of Facts
Not in Dispute does not provide any support for a disparagement
or defamation claim. In its brief in support of its summary
judgment motion, however, it states: "Albion has consistently
portrayed itself as the only U.S. made supplier of dispensing
guns and that is the reputation Albion enjoyed in the
marketplace." Further, Plaintiff highlights the following
statements from the Joint Final Pretrial Order:

> 12. Albion disparaged Newborn's products imported from
> Taiwan as inferior in quality to Albion's products
> purportedly Made in USA by Albion when in fact,
> Albion's products were also made in Taiwan.
>
> 34. Albion has displaced Newborn as a supplier or
> thwarted Newborn's vigorous efforts to supply
> various distributors by representing itself as the
> only supplier of dispensing gun products Made in
> USA.

The Court finds these additional documents do not create a

duty to defend.  First, as to the use of the term "disparaged"
in the Joint Final Pretrial Order, the Court finds this
conclusory statement is insufficient to create a duty to defend.
See generally Gardner v. State Farm Fire & Cas. Co., 544 F.3d
553, 561 (3d Cir. 2008) ("[T]he District Court correctly
concluded that State Farm did not violate the Policy by refusing
to defend irrespective of Appellant's conclusory allegations in
her Complaint in the State Court Action."); Ingersoll-Rand
Equip. Corp. v. Transp. Ins. Co., 963 F. Supp. 452, 455 (M.D.
Pa. 1997) ("Count V alleges, without elaboration, that
Transportation Insurance breached its duty to use due care in
defending Ingersoll-Rand.  Such a conclusory allegation is
insufficient to state a claim for breach of the contractual duty
to defend.").  Simply using the word "disparaged" does not
create a claim for disparagement.  Further, the context of the
term demonstrates that any claimed "disparagement" was still
based on Plaintiff's "Made in USA" designation and not on any
statement made about Newborn or its products.

     In considering the statement that Plaintiff represented
itself as the only supplier of dispensing gun products that were
made in the United States, the Court emphasizes that "it is the
allegation in the complaint of a cause of action" which triggers
the duty to defend.  Voorhees, 607 A.2d at 1259.  While
extrinsic evidence can be considered, it is still "the nature of

the claim against" the insured that triggers the duty to defend.
Abouzaid, 23 A.3d at 347 (quoting SL Indus., 607 A.2d 1266).  A
statement that Albion "represent[ed] itself as the only supplier
of dispensing gun products Made in USA" is a conclusory
allegation that is not supported by the factual allegations in
the Amended Complaint or the other evidence presented to this
Court in considering these summary judgment motions.  The only
factual allegation regarding Albion's representations is that
its products represented they were made in the United States,
not that they were represented as the only products made in the
United States.  The Court thus does not find this alone supports
a disparagement claim, nor that this statement presents an
ambiguity that would require this Court to deny summary
judgment.[11]

Third, Defendant proffers that on June 30, 2017, Plaintiff
filed an Amended Complaint in this matter attaching for the

---

[11]    Further, Plaintiff admits in its moving brief that "Albion
did not advertise its 'Made in America' products as the only
caulking gun products so made."  In its reply brief, however,
Plaintiff appears to refute this:

    Much of Hartford's brief is an exercise in sophistry,
    especially its bold statement that "there are no
    allegations . . . that Albion claimed to be the only
    manufacturer to produce products made in America" with
    its duplicitous use of the phrase "in the Underlying
    Complaint."  It thereby conveniently ignores that the
    JFPTO, which amended the Newborn Complaint, makes such
    a claim.

first time the February 19, 2013 Memorandum of Law in Opposition
to Albion Engineering Co.'s Motion for Leave to Amend its Answer
to the Newborn Complaint, an attached Declaration of Albert S.
Lee, a June 2011 Bob Reynolds e-mail, and a March 2011 Mark
Schneider Letter. Plaintiff's response does not contest this.[12]
Fourth, it is proffered that additional material was provided to
Defendant for the first time with Plaintiff's Motion for Partial
Summary Judgment, namely Plaintiff's May 23, 2016 Memorandum of
Law in Opposition to Newborn's Motion for Summary Judgment and
additional communications between Schneider and others. As the
Court stated in considering the Motion to Strike, the Court will
not consider these documents, which were not given to Plaintiff
prior to the filing of the Amended Complaint.[13]

---

[12]   In Plaintiff's brief, it says the February 19, 2013
Memorandum "was available to Hartford at the time it received
notice of the claim." The Court finds no indication this
document was submitted with Plaintiff's original communication
to Defendant of the Newborn Suit.

[13]   In any event, the Court finds these documents would not
support finding a duty to defend. As to the documents provided
with the Amended Complaint, the February 19, 2013 Memorandum,
the Lee Declaration, and the Reynolds e-mail all do not show any
indication of facts that would support a claim of disparagement
or defamation. As for the Schneider letter, it referred to
Newborn's products as "[i]nferior tools" that were "knock-off
guns." The letter also implied that Newborn's "cheaper tools"
will cause "problem[s] on a job" for customers. These
statements do not form a basis for any of the allegations in the
Newborn Complaint, which focus on the "Made in USA" designation
on Plaintiff's products. The Court's task in determining the
duty to defend focuses on the allegations of the underlying
complaint. That discovery in the Newborn Suit may reveal

For the same reasons listed with regard to disparagement, the Court finds neither the complaint, nor the supplemental documentation provided to Defendant from Plaintiff, can support a potential claim for defamation. Under New Jersey law, "[a] statement is defamatory if it is false, communicated to a third person, and tends to lower the subject's reputation in the estimation of the community or to deter third persons from associating with him." W.J.A. v. D.A, 43 A.3d 1148, 1153 (N.J. 2012) (quoting Lynch v. N.J. Educ. Ass'n, 735 A.2d 1129 (1999)). While "a single statement may simultaneously satisfy the elements of both defamation and product disparagement," the two doctrines differ. Gillon, 218 F. Supp. 3d at 295-96.

As with disparagement, an essential element of defamation is that the statement be concerning the plaintiff. See, e.g. Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1113 (N.J.

---

principals of Albion have slandered Newborn or its products in the heat of competition does not inform the Court's judgment as to whether the lawsuit filed by Newborn alleges a similar slander.

As to the documents provided with Plaintiff's summary judgment motion, the Court finds the May 23, 2016 Memorandum contains no allegations of defamation or disparagement, or facts that would support such allegations. As to the Schneider communications, the most glaring statement to the Court is that of Schneider stating that sales representatives should remind customers Plaintiff "[is] the only USA manufacturer." However, the Court similarly finds this extrinsic evidence insufficient to displace the Court's finding that the complaint does not contain sufficient factual allegations to support a disparagement claim that would trigger the duty to defend.

2009) ("We have identified the elements of the cause of action

for defamation to be: '(1) the assertion of a false and

<u>defamatory statement concerning another</u>; (2) the unprivileged

publication of that statement to a third party; and (3) fault

amounting at least to negligence by the publisher.'" (emphasis

added) (quoting <u>DeAngelis v. Hill</u>, 847 A.2d 1261 (2004)); <u>NuWave</u>

<u>Inv. Corp. v. Hyman Beck & Co.</u>, 75 A.3d 1241, 1249 (N.J. Super.

Ct. App. Div. 2013); <u>McLaughlin v. Rosanio, Bailets & Talamo</u>,

751 A.2d 1066, 1071 (N.J. Super. Ct. App. Div. 2000) ("In order

to establish a prima facie case of defamation . . . , a

plaintiff must show that defendant communicated to a third

person <u>a false statement about plaintiff</u> that tended to harm

plaintiff's reputation in the eyes of the community or to cause

others to avoid plaintiff." (emphasis added)).  The lack of a

representation by Plaintiff concerning Newborn is similarly

fatal to Plaintiff's defamation duty to defend argument.[14]

    Finding a disparagement or defamation claim not present in

---

[14]    The Court also notes that a representation that a product
is not made in the United States does not necessarily imply
inferior quality.  Indeed, there are many reasons why an
individual might prefer a product made in the United States that
have nothing to do with the inherent quality of the product,
such as to support the United States economy in general, create
or save American jobs, a sense of patriotism, national security
concerns over the state of this country's manufacturing base, to
satisfy a contractual party, because of statutory or regulatory
requirements for U.S. manufactured goods, or just plain old
inertia or nostalgia.

the underlying suit, the Court finds there was no duty to defend.  Thus, the Court does not address the relevant exclusions to the Policy that Defendant argues apply.  Defendant had no duty to defend in this case, and the Court will grant summary judgment in favor of Defendant.

An appropriate Order will be entered.


Date: <u>March 26, 2018</u>                <u>s/ Noel L. Hillman</u>
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.